**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  04-cv-01107-REB-CBS

ELIZABETH MEDINA, Individually as mother of and Personal Representative of the Estate of LUCAS de HERRERA, and
MARGARITO de HERRERA, Individually as father of LUCAS de HERRERA,

     Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS, ALAMOSA COUNTY, COLORADO, in both their individual capacities;
SHERIFF DAVID STRONG, in his individual capacity;
UNDERSHERIFF JOHN BIANCA, in his individual capacity;
SGT. RON GOODMAN, in his individual capacity;
FORMER DEPUTY RICK MARTINEZ, in his individual capacity;
DEPUTY LISA BENEVIDEZ, in her individual capacity;
CORPORAL GARY THOMAS, in his individual capacity,

     Defendants.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

The matter before me is defendants' **Motion for Summary Judgment** [#42], filed January 31, 2006.  I grant the motion.

### I.  JURISDICTION

I have jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question).

### II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id.* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  ANALYSIS

Plaintiffs are the parents of Lucas de Herrera ("Lucas"), who committed suicide while incarcerated at the Alamosa County Jail (the "Jail"). The material facts of this case are essentially undisputed. Only June 12, 2002, Lucas was incarcerated at the

2

Jail after turning himself over to authorities following his escape from a community corrections program. On June 25, 2002, Lucas told Technician Jason Maestas that he was having "crazy thoughts in his head" and was thinking of killing himself. Consistent with their training, deputies contacted the San Luis Valley Comprehensive Mental Health Facility ("Mental Health") immediately. Counselor Kristi Ninnemann arrived at the Jail within the hour. After speaking with Lucas for approximately 15 minutes, Ninnemann concluded that he had no mental health issues and was simply malingering in hopes of being relocated to the hospital. Ninnemann advised jail personnel that she had observed several small cuts on Lucas's wrists, which he told her he had made using a pencil. Despite her conclusion of malingering, Ninnemann recommended that Lucas be placed on suicide watch, which was done.

Only July 2, 2002, Lucas's attorney asked that Lucas be re-evaluated by Mental Health and taken off suicide watch. Ninnemann performed the requested evaluation and determined that Lucas did not pose a threat to himself. He was taken off suicide watch and returned to a normal cell.[1]

In the early hours of July 24, 2002, Lucas submitted a "kite" that read, "I would like to speak to someone from mental health as soon as possible because I've bee[n] feeling depressed for the past couple of days. I need to speak with someone today. Please." Defendant Lisa Benevidez observed plaintiff during this time frame and found him to be acting normally. She noted Lucas's request in the departmental "pass-on" log for the day shift officers, but specifically noted that "[n]othing we've seen . . . indicates

---

[1] At that time Lucas was serving time in administrative lock-down after having been found to have participated with another inmate in an attempted escape.

any suicidal tendencies."

When defendant Gary Thomas received Lucas's kite the following morning, he called Mental Health to request a counselor, but got the department's answering machine. He left a message asking that a counselor come to the Jail to evaluate Lucas. For reasons that are unknown, no counselor responded to this message, and no one from Mental Health came to evaluate Lucas, although he did not file a subsequent kite or otherwise request further assistance. Shortly after 3:00 a.m., on the morning of July 27, 2002, Lucas was found dead in his cell, having hung himself from a bookshelf with pieces of a bed sheet. This lawsuit, in which plaintiffs contend that defendants are liable for failing to provide adequate medical care for Lucas's serious medical needs and that Sheriff David Strong is liable for failure to adequately train and supervise his deputies in responding to the psychiatric needs of inmates at the Alamosa County Jail, followed.

Plaintiffs' first cause of action claims that defendants were deliberately indifferent to Lucas's serious medical needs; thus, violating his Eighth Amendment right to be free from cruel and unusual punishment. **See Hunt v. Uphoff**, 199 F.3d 1220, 1224 (10th Cir. 1999); **see also Riddle v. Mondragon**, 83 F.3d 1197, 1202 (10th Cir. 1996) (duty to provide necessary medical care includes psychological and psychiatric care). "Deliberate indifference" involves both an objective and a subjective component. **Farmer v. Brennan**, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); **Hunt**, 199 F.3d at 1224. The objective component is satisfied if it is shown that the medical need was "sufficiently serious," in other words, that "it is one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." ***Sealock v. Colorado***, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation and internal quotation marks omitted). To establish the subjective component, plaintiffs must demonstrate that defendants acted with a sufficiently culpable state of mind, that is "that defendant(s) knew [Lucas] faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." ***Oxendine v. Kaplan***, 241 F.3d 1272, 1276 (10th Cir. 2001) (citations and internal quotation marks omitted).

I find that plaintiffs have failed to show a genuine issue of material fact as to either component of this test. With respect to the objective component, it is clear that Lucas had never been diagnosed with true suicidal ideation prior to his death. Although he reported having suicidal thoughts on June 25, 2002, Ninnemann clearly stated her opinion that he was malingering. The fact that she thereafter recommended he be put on suicide watch out of an abundance of caution does not change the fact that he never was actually diagnosed as suicidal. Moreover, at the time of his death, Lucas had been taken off suicide watch after Ninnemann concluded, based on her follow-up evaluation, that he posed no threat to himself.

Nor is there sufficient evidence to suggest that Lucas's suicidal tendencies were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." ***Sealock***, 218 F.3d at 1209. Unlike his earlier verbal report in June, Lucas's July 24, 2002, kite did not state that he was having thoughts of harming himself, but

5

instead merely said that he was feeling depressed.[2] The deputy who observed him at that time found nothing unusual about his behavior, and he did not appear to exhibit suicidal tendencies. No evidence in the record contradicts her account. It is undisputed that defendants were not medical professionals and had no formal mental health training themselves. Given these circumstances, I can find no genuine issue of material fact regarding whether defendants were objectively indifferent to Lucas's serious medical needs.

In addition, plaintiffs have failed to present sufficient evidence to raise a genuine issue of fact with respect to the subjective component of their Eighth Amendment claim. In the context of a prison suicide case, the Tenth Circuit requires that the officers have been aware of a specific risk that the prisoner would commit suicide. ***See Barrie v. Grand County, Utah***, 119 F.3d 862, 869 (10th Cir. 1997); ***Estate of Hocker by Hocker v. Walsh***, 22 F.3d 995, 1000 (10th Cir. 1994). There is simply no such evidence here. At most, defendants were aware that Lucas, who was originally put on suicide watch even though Ninnemann had found him to be malingering and who subsequently had been taken off suicide watch on her recommendation, was feeling depressed and may have been suffering from drug withdrawal. This evidence is not sufficient to suggest that defendants were alerted to the possibility that Lucas was suicidal.

The fact that a Mental Health counselor never responded to defendants' June 24, 2002, request to evaluate Lucas does not change my conclusion in this regard.

---

[2] Although plaintiff Medina informed defendants that Lucas was experiencing symptoms of drug withdrawal and asked to talk to his priest, I cannot find that it would have been obvious to a lay person, based on such facts, that Lucas was suicidal.

Although defendants may be liable for "intentionally delaying of denying access to medical care," *Hunt*, 199 F.3d at 1224, the evidence here does not support such a conclusion.  Defendants timely responded to Lucas's request in accordance with their training.  Moreover, Lucas never submitted subsequent kites or asked further about the status of his initial request for counseling.  Defendants' failure to follow-up when Mental Health did not respond to their initial request at most shows negligence, which is not sufficient to prove a violation of the Eighth Amendment.  *See Riddle*, 83 F.3d at 1203 ("[A]ccidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a mental condition do not constitute a medical wrong under the Eighth Amendment.") (citation and internal quotation marks omitted).  For these reasons, I conclude that defendants are entitled to summary judgment as to this claim.

Moreover, given their failure to prove an underlying constitutional violation, plaintiffs cannot make out a viable claim against Sheriff Strong for failure to train and failure to supervise.  *Webber v. Mefford*, 43 F.3d 1340, 1344 (10th Cir. 1994).  Therefore, summary judgment is appropriate as to this claim as well.

## IV.  CONCLUSION

Plaintiffs have failed to present a genuine issue of material fact regarding their claims in this lawsuit.  Accordingly, defendants are entitled to summary judgment.

**THEREFORE, IT IS ORDERED** as follows:

1.  That  defendants' **Motion for Summary Judgment** [#42], filed January 31, 2006, is **GRANTED**;

2.  That plaintiffs' claims are **DISMISSED WITH PREJUDICE**;

3.  That judgment **SHALL ENTER** on behalf of defendants, the Board of County Commissioners of Alamosa County, Colorado, Sheriff David Strong, Undersheriff John Bianca, Sgt. Ron Goodman, Rick Martinez, Deputy Lisa Benevidez, and Corporal Gary Thomas, and against plaintiffs, Elizabeth Medina, individually as mother of and personal representative of the estate of Lucas de Herrera, and Margarito de Herrera, individually as father of Lucas de Herrera;

4.  That the Trial Preparation Conference scheduled for Friday, May 5, 2006, at 9:30 a.m., and the trial scheduled to commence on Monday, May 8, 2006, are **VACATED**; and

5.  That defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to **FED.R.CIV.P**. 54(d)(1) and **D.C.COLO.LCivR.** 54.1.

Dated April 4, 2006, at Denver, Colorado.

                          **BY THE COURT:**

                          **s/ Robert E. Blackburn**
                          **Robert E. Blackburn**
                          **United States District Judge**